

ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | NO. |
| v. | |
| ABDUL HAQ KHAN<br>  a/k/a Fazal Haq Khan<br>  a/k/a Abdul Amiri | **FILED UNDER SEAL**<br><br>3-25CR-130-E |

**INDICTMENT**     4:25-mj-0245

The Grand Jury charges:

At all times material to this indictment:

### General Allegations

1. On or about October 20, 1999, the defendant, using the name **Abdul Haq Khan**, submitted and caused to be submitted an "Application for Immigrant Visa and Alien Registration," Form 230, for an IR-2 class visa. An unmarried child of a United States citizen under 21 is eligible for an IR-2 visa. Thereafter, on or about July 27, 2001, the defendant, using the name **Abdul Haq Khan**, submitted and caused to be submitted a second "Application for Immigrant Visa and Alien Registration," Form 230, for an IR-2 class visa. In the Form 230, the defendant claimed he was born in Pakistan in August 1980, making him 20 at the time the second Form 230 was submitted to the United States. The defendant's request for an IR-2 visa was granted and issued on or about July 30, 2001.

2. On or about August 4, 2001, the defendant, using the name **Abdul Haq Khan**, and a date of birth in August 1980, traveled to the United States and was authorized entry pursuant to the IR-2 visa issued on or about July 30, 2001. At that time, **Khan** was issued a Permanent Resident Card.

3. On or about September 27, 2006, the defendant, using the name **Abdul Haq Khan**, submitted and caused to be submitted an "Application for Naturalization," Form N-400.

4. On or about May 28, 2009, the defendant, using the name **Fazal Haq Khan**, submitted and caused to be submitted an "Application for Immigrant Visa and Alien Registration," Form 230, at the United States Embassy in Islamabad, Pakistan for an IR-2 class visa. In the "Application for Immigrant Visa and Alien Registration," Form 230, the defendant claimed he was born in October 1989, making him 19 at the time the Form 230 was submitted to the United States. Thereafter, the defendant abandoned the application, and the defendant's request for the IR-2 visa was closed.

5. On or about February 2, 2010, the defendant, using the name **Abdul Haq Khan**, appeared for an interview at the United States Citizenship and Immigration Services ("USCIS") Albuquerque, New Mexico Office with his "Application for Naturalization." As part of the interview, the defendant was placed under oath and questioned about his application.

6. In the defendant's "Application for Naturalization," which he was interviewed about by a USCIS officer, the defendant did not list the name, **Fazal Haq Khan**, as another name he had used.

7. In the defendant's "Application for Naturalization," which he was interviewed about by a USCIS officer, the defendant stated no when asked:

    a. "Have you **ever** committed a crime or offense for which you were **not** arrested;"

    b. "Have you **ever** given false or misleading information to any U.S. Government official while applying for any immigration benefit or to prevent deportation, exclusion, or removal;" and

    c. "Have you ever lied to any U.S. Government official to gain entry or admission into the United States?"

8. On or about February 3, 2010, USCIS approved the defendant's "Application for Naturalization."

9. On or about March 5, 2010, the defendant, using the name **Abdul Haq Khan**, and a date of birth in August 1980, was sworn in as a naturalized United States citizen.

10. On or about March 9, 2010, the defendant, using the name **Abdul Haq Khan,** obtained a United States passport with a date of birth in August 1980. In the passport application, the defendant did not list any other names used by him.

11. On or about December 10, 2011, the defendant, using the name **Abdul Haq Khan**, departed the United States from John F. Kennedy International Airport and traveled to Dubai, United Arab Emirates ("UAE").

12. On or about December 28, 2011, the defendant, using the name **Abdul Haq Khan**, applied to renew and obtain a new United States passport at the United States Consulate in Hong Kong. In the passport application, signed by the defendant, the application stated "no" when asked to list any other names used by the defendant.

13. On or about January 23, 2012, the defendant, using the name **Abdul Haq Khan**, returned to the United States using his United States passport.

14. Thereafter, the defendant, using the name **Abdul Haq Khan**, traveled internationally repeatedly using his United States passport.

15. On or about January 10, 2016, the defendant, using the name **Abdul Haq Khan**, returned to the United States using his United States passport.

16. On or about July 14, 2016, an application for a nonimmigrant B1/B2 visa was submitted online for B.F., a relative of the defendant, from the internet protocol ("IP") address 66.25.210.48.

17. On or about July 17, 2016, the defendant, using the name **Abdul Amiri**, submitted and caused to be submitted an application for a nonimmigrant B1/B2 online from the IP address 66.25.210.48.

18. On or about July 27, 2016, an application for a nonimmigrant B1/B2 visa was submitted online for B.Z., a relative of the defendant, from the IP address 66.25.210.48.

19. On or about August 2, 2016, the defendant, using the name **Abdul Haq Khan**, departed the United States from Dallas Fort Worth International Airport ("DFW") and traveled to Dubai, UAE.

20. On or about August 15, 2016, the defendant's relatives, B.F. and B.Z. went to the United States Embassy in Kabul, Afghanistan for an interview in support of their nonimmigrant B1/B2 visa applications. Their visa applications were denied.

21. On or about September 30, 2016, the defendant, using the name **Abdul Haq Khan**, returned to the United States using his United States passport. Upon arrival at DFW, the defendant informed Customs and Border Patrol ("CBP") that:

   a. He departed the United States on or about August 2, 2016;

   b. He traveled to Kabul, Afghanistan for approximately 40 days to visit his mother and sister;

   c. He then traveled to London, England for approximately 7 days to visit another sister, after which he traveled to Amsterdam for a night to visit a friend;

   d. He then flew from London, England to Mexico City, Mexico staying for approximately four hours; and

e. Then he flew from Mexico City, Mexico to DFW to return to his home in Irving.

22. On or about July 22, 2019, the defendant, using the name **Abdul Haq Khan**, submitted an application to renew and obtain a new United States passport. In the passport application, the defendant did not list any other names used by him.

## The CARES Act and the PPP

23. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted on or about March 27, 2020, to provide emergency financial assistance to Americans suffering economic harms from the COVID-19 pandemic. To achieve this goal, the CARES Act established new temporary programs and expanded existing programs administered by the United States.

24. One source of relief provided by the CARES Act was authorization of forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP"). The PPP was implemented by the United States Small Business Administration ("SBA"), and under the PPP, participating third-party lenders approved loan applications and disbursed PPP loans to qualifying businesses. To obtain a PPP loan, a business was required to submit a PPP loan application to a lender. In the PPP loan application, the business was required to state, among other things, the business's average monthly payroll expenses and its number of employees. This payroll information was used to calculate the amount of funds that the business was eligible to receive as a PPP loan.

25. Celtic Bank was a financial institution as defined in 18 U.S.C. § 20, the deposits of which were insured by the Federal Deposit Insurance Corporation ("FDIC"). Celtic Bank participated in the PPP as a third-party lender.

### Entity and Bank Accounts

26. On or about July 11, 2017, defendant **Abdul Haq Khan** opened a bank account at BBVA Compass Bank ("BBVA Compass") with account number ending in 8934. **Khan** had sole signatory authority on the bank account.

27. On or about March 1, 2018, defendant **Abdul Haq Khan** caused incorporation records to be submitted to the Texas Secretary of State, incorporating Gemstone Garden, Inc. ("Gemstone Garden") in the state of Texas.

28. On or about November 12, 2019, defendant **Abdul Haq Khan** opened a business checking account at BBVA USA ("BBVA") in the name of Gemstone Garden with account number ending in 8912. **Khan** and I.H.K. had signatory authority on the account. Thereafter, BBVA merged with PNC Bank, and the Gemstone Garden bank account was assigned PNC Bank account number ending in 1327.

29. During the quarters between on or about March 2018 and June 2020, Gemstone Garden did not report any employees to the Texas Workforce Commission ("TWC"). Thereafter, for the months covering the third and fourth quarters of 2020, Gemstone Garden indicated to the TWC that it had 6 employees. Gemstone Garden did not report any employees during 2021.

30. On or about July 9, 2020, defendant **Abdul Haq Khan** and R.A. opened a bank account at BBVA with account number ending in 3904. **Khan** and R.A. had signatory authority on the bank account.

31. On or about July 9, 2020, defendant **Abdul Haq Khan** and K.A. opened a bank account at BBVA with account number ending in 5869. **Khan** and K.A. had signatory authority on the bank account.

32. On or about July 21, 2020, defendant **Abdul Haq Khan** opened a business money market account at BBVA in the name of Gemstone Garden with account number ending in 1980. **Khan** had sole signatory authority on the account.

Count One
False Statement in Application for Passport
[Violation of 18 U.S.C. § 1542]

33. Paragraphs 1 through 22 of this indictment are re-alleged and incorporated by reference as though fully set forth herein.

34. On or about July 22, 2019, in the Dallas Division of the Northern District of Texas, defendant **Abdul Haq Khan** did knowingly and willfully make a false statement in an application for a passport with intent to induce and secure for his own use the issuance of a passport under the authority of the United States, contrary to the laws regulating the issuance of such passports and the rules prescribed pursuant to such laws, that is, in that application, the defendant falsely stated that he had not used any other names, when in truth and fact, the defendant knew that he had previously used the names Fazal Haq Khan and Abdul Amiri.

In violation of Title 18, United States Code, Section 1542.

<u>Count Two</u>
Wire Fraud Affecting a Financial Institution
[Violation of 18 U.S.C. § 1343]

35.	Paragraphs 23 through 32 of this indictment are re-alleged and incorporated by reference as though fully set forth herein.

<u>The Scheme to Defraud</u>

36.	From on or about June 1, 2020, through on or about August 31, 2020, defendant **Abdul Haq Khan** sought to unlawfully enrich himself and others, by among other things, submitting and causing the submission of a false and fraudulent application for a PPP loan, and to thereafter cause the transfer of loan's proceeds to the benefit of himself and others.

37.	It was part of the scheme that, on or about June 2, 2020, defendant **Abdul Haq Khan** submitted, and caused to be submitted, a PPP loan application that falsely described Gemstone Garden's average monthly payroll as $75,395. **Khan** further falsely claimed that Gemstone Garden had 45 employees.

38.	Thereafter, Celtic Bank approved defendant **Abdul Haq Khan's** PPP loan application.

39.	On or about June 4, 2020, defendant **Abdul Haq Khan** caused Celtic Bank to electronically transfer approximately $188,487 in fraudulently obtained PPP loan proceeds into the Gemstone Garden BBVA bank account ending in 8912 that **Khan** and I.H.K. had signatory authority.

40. Thereafter, defendant **Abdul Haq Khan** caused the fraudulently obtained PPP loan's proceeds to be transfer from the Gemstone Garden BBVA bank account ending in 8912 to other bank accounts for the benefit of himself and others.

41. Thereafter, the PPP loan obtained by defendant **Abdul Haq Khan** in the name of Gemstone Garden was charged off by Celtic Bank and the SBA.

## The Charge

42. On or about June 4, 2020, in the Northern District of Texas and elsewhere, defendant **Abdul Haq Khan** did knowingly and willfully devise, and intended to devise, a scheme to defraud, and for obtaining money and property by means of material false and fraudulent pretenses, representations, and promises, and for the purpose of executing such scheme did cause a wire communication to be transmitted in interstate commerce, that is, an electronic transfer of approximately $188,487 in United States currency from Celtic Bank to Gemstone Garden's BBVA bank account ending in 8912, thereby, affecting a financial institution.

All in violation of Title 18, United States Code, Section 1343.

Forfeiture Notice
[18 U.S.C. §§ 982(a)(2); 982(a)(6)(A)(ii)(I);
982(a)(6)(A)(i); 982(a)(6)(A)(ii)(II)]

43. Upon conviction of the offense alleged in Count One, and pursuant to 18 U.S.C. §§ 982(a)(6)(A)(ii)(I), 982(a)(6)(A)(ii)(II), and 982(a)(6)(A)(i), defendant **Abdul Haq Khan** shall forfeit to the United States of America: (a) any property, real or personal, that constitutes, or is derived from or is traceable to, the proceeds obtained directly or indirectly from the commission of the offense alleged in Count One; (b) any conveyance, including any vessel, vehicle, or aircraft used in the commission of the offense alleged in Count One; and (c) any property, real or personal, that is used to facilitate, or is intended to be used to facilitate, the commission of the offense alleged in Count One.

44. Upon conviction of the offense alleged in Count Two, and pursuant to 18 U.S.C. § 982(a)(2), defendant **Abdul Haq Khan**, shall forfeit to the United States of America any property constituting, or derived from, proceeds the defendant obtained directly or indirectly, as a result of the commission of the offense alleged in Count Two.

A TRUE BILL:

_____
FOREPERSON

CHAD E. MEACHAM
ACTING UNITED STATES ATTORNEY

_____
JONGWOO CHUNG
Assistant United States Attorney
North Carolina Bar No. 52070
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone: 214-659-8600
Facsimile: 214-659-8806
Email: Jongwoo.Chung@usdoj.gov

_____
TIFFANY H. EGGERS
Assistant United States Attorney
Florida Bar No. 0193968
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone: 214-659-8600
Facsimile: 214-659-8805
Email: Tiffany.Eggers@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

THE UNITED STATES OF AMERICA

v.

**ABDUL HAQ KHAN**

SEALED INDICTMENT

18 U.S.C. § 1542
False Statement in Application for Passport
(Count 1)

18 U.S.C. § 1343
Wire Fraud Affecting a Financial Institution
(Count 2)

18 U.S.C. §§ 982(a)(2); 982(a)(6)(A)(ii)(I);
982(a)(6)(A)(i); 982(a)(6)(A)(ii)(II)
Forfeiture Notice

2 Counts

A true bill rendered

_____
FOREPERSON

DALLAS

Filed in open court this 25 day of March, 2025.

**Warrant to be Issued**

_____
UNITED STATES MAGISTRATE JUDGE
No Criminal Matter Pending